IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUDY THORNHILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-335-M-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Judy Thornhill seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the hearing decision should be reversed and remanded.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments, including major depressive disorder, anxiety disorder/posttraumatic stress disorder, gastroesophageal reflux disease, arthritis, and hypertension. After her application for disability was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on February 7, 2012, and a supplemental hearing was held on July 24, 2012. *See* Administrative Record, Dkt. No. 14 ("Tr.") at 60-118. At the time of the hearings, Plaintiff was 61 years old. She is a high school graduate, attended college for 2 years, and has past work experience as a sales clerk, cashier, receptionist, department supervisor, and maid. Plaintiff has not engaged in substantial gainful activity since June 8, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that Plaintiff suffered from affective disorder, anxiety related disorder, and posttraumatic stress disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform the full range of work but could not return to her past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a bakery worker on a conveyer line, cleaner/housekeeper, or mail clerk – jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that (1) the ALJ improperly rejected medical expert testimony that Plaintiff meets listing 12.04; (2) the ALJ failed to address Plaintiff's inability to maintain employment; and (3) the ALJ impermissibly "played doctor" by rejecting all medical opinions and relying on his lay opinion to develop Plaintiff's residual functional capacity ("RFC").

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the

4

> claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be

6

established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I.     <u>Substantial evidence supports the finding that Plaintiff does not meet a listing.</u>

Plaintiff contends that the ALJ erred at step three by rejecting the medical expert testimony of Glen McClure, Ph.D. that Plaintiff meets a listing. *See* Tr. at 22-23. At the supplemental hearing, Dr. McClure testified that Plaintiff met the "C" criteria for Listing 12.04(C). *See id.* at 66-68. Listing 12.04(C) requires a finding of disability when a claimant has a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.04(C).

7

Dr. McClure specifically testified that Plaintiff met the requirements of 12.04(C)(2): "[S]he would meet the C criteria ... it would be under residual and disease process that results in such marginal adjustments that even a minimal increase in mental demands or changes in environment would be predicted to cause the individuals to decompensate". *See* Tr. at 67. Dr. McClure referenced documents he had reviewed by exhibit number, but did not otherwise explain the basis for his opinion.

The ALJ rejected Dr. McClure's testimony "based on the record as a whole and the claimant's statements." *See id.* at 23. In his Decision, the ALJ stated that "Dr. McClure testified that in his opinion, the claimant has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate." *See id.* at 22; *see also id.* at 67. The ALJ noted that "Dr. McClure did not provide an adequate rationale of how he arrived at his conclusion." *Id.* at 22.

The ALJ stated that a review of Plaintiff's work record showed her earnings had never been substantial, which suggested that her motivation to work was not a strong one, and Plaintiff told a MHMR caseworker that her goal is to get disability. The ALJ also referred to his prior, exhaustive review of the evidence in step two that showed Plaintiff's symptoms from affective disorders to be in the mild to moderate range, which supported his finding that Plaintiff did not meet Listing 12.04(C). The ALJ observed that Plaintiff had been given global assessment functioning ("GAF") scores in the 40 to 45 range, from which he would expect Plaintiff to have an inability to

function in almost all areas. But the ALJ found those scores to be inconsistent with progress notes rating her symptoms as mild. *See id.* at 23.

The ALJ also considered Plaintiff's statements about her activities of daily living in an adult function report to determine that she did not meet Listing 12.04(C). The ALJ acknowledged that Plaintiff claimed to have memory problems and confusion but noted that Plaintiff stated in the function report that she does not need any special reminders to attend to personal needs and grooming. Plaintiff does not need help or reminders to take medication. She prepares sandwiches and casseroles. She sweeps, mops, vacuums, cleans bathrooms, dusts, does laundry, and drives. She is able to go out alone and shop in stores. She is able to pay bills, count change, and handle a checking account. Her interests and hobbies include photography, Facebook, television, and sewing. She goes to church regularly but describes herself as a loner. She states that she has good ability to follow written instructions and can follow verbal instructions but might need to take notes. She feels intimidated by supervisors and managers but has never been laid off from a job because of problems getting along with people. *See id.* at 23, 273-83.

Plaintiff argues that the ALJ's reliance on Plaintiff's mild symptoms is consistent with Dr. McClure's testimony that Plaintiff is stable in a highly supportive environment. *See* Dkt. No. 17 at 13. But that is not what Dr. McClure said. Dr. McClure testified that Plaintiff met the criteria for 12.04(C)(2), a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the

individual to decompensate, not 12.04(C)(3), a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *See id.* at 67; 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.04(C)(2) & (3).

Plaintiff also argues that Plaintiff's mild symptoms are consistent with other evidence that Plaintiff is stable in a highly supportive environment, which Plaintiff contends is consistent with Dr. McClure's testimony that Plaintiff meets Listing 12.04(C). In her reply, Plaintiff points to the following as evidence that Plaintiff is stable in a highly stable environment: a Medical Assessment of Ability to Do Work Related Activities (Mental) by Donna Haynes, a registered nurse, and Eric Kemp, M.D. that Plaintiff's ability to demonstrate reliability or relate predictably in social settings is "fair" or "seriously limited," Tr. at 738-39; a letter in which registered nurse Donna Haynes states that, "[d]ue to unstable symptoms of depression and anxiety and having difficulty being around people and at time leave her house, [Plaintiff] is unable to work at this time. She also has difficulty adapting to stressful situations and changes, and this causes an increase in her symptoms," *id.* at 347; a finding by Linda Ludden, Ed.D., a State agency examining physician, that Plaintiff's prognosis is "poor," *id.* at 467; and a letter in which counselor Susan Lautz states that Plaintiff is not "capable of getting or keeping employment at this time," *id.* at. *See* Dkt. No. 21 at 4. Plaintiff refers to the statutory introductory paragraph addressing the effects of structured settings to support her argument that, even though a claimant's condition may be controlled in a supportive setting, the claimant may be disabled when she cannot function outside

a structured setting. *See* Dkt. No. 21 at 4; 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(F); *see also Herrington v. Astrue*, Civ. A. No. H-08-3204, 2010 WL 816650 (S.D. Tex. Mar. 4, 2010) (remanding for reconsideration of whether claimant met Listing 12.04(C) because there was substantial evidence that Plaintiff had history of and continued need for highly supportive living arrangement).

Also, relying on *Blancas v. Astrue*, 690 F. Supp. 2d 464, 483 (W.D. Tex. 2010), Plaintiff argues that the ALJ's consideration of Plaintiff's work history and activities of daily living is flawed and requires reversal because the ALJ allegedly focused more on what Plaintiff can do than want she cannot do. For example, the ALJ stated that Plaintiff can perform household chores, but Plaintiff reported to the consultive examiner that she had difficulty completing chores, maintaining a residence, and managing finances. *See* Tr. at 464. And the ALJ noted that Plaintiff can go shopping, but Plaintiff testified that she avoids the public due to paranoia, was afraid of driving, and tries to go grocery shopping late at night or early in the morning because if there is loud talking, it provokes her anxiety. *See id.* at 96, 97, 99. Plaintiff also argues that the ALJ drew improper inferences from her work history because the ALJ inferred that Plaintiff lacked the motivation to work but discounted Plaintiff's testimony about enrolling in a return-to-work program, which she was unable to complete because of excessive absences due to her depression. *See id.* at 75.

An ALJ has broad discretion to determine medical experts' credibility and weigh their opinions. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). And the criteria for the listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160,

162 (5th Cir. 1994). Concluding that the ALJ's findings were not supported by substantial evidence would be "appropriate only if no credible evidentiary choices or medical findings supported the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal quotation marks omitted).

Here, there is no evidence Plaintiff required a highly structured environment. This is not a case like *Herrington* where the plaintiff required daily and constant supervision and assistance. And Dr. McClure's testimony that Plaintiff met a listing was not based on the need for a highly structured environment. Instead, Dr. McClure testified that Plaintiff met listing 12.04(C) because Plaintiff is under a residual and disease process that results in such marginal adjustments that even a minimal increase in mental demands or changes in environment would be predicted to cause the individuals to decompensate. The record is replete with evidence of Plaintiff's mild symptoms. From September 2009 through February 2012, Plaintiff's treating sources at Lakes Regional MHMR consistently rated Plaintiff's symptoms from depression and anxiety as no higher than a four on a scale of ten, indicating less than moderate symptoms. *See id.* at 23, 378, 385, 393, 400, 421, 561, 581, 588, 596, 604, 612, 619, 626, 722, 730. And Plaintiff's activities of daily living, work history, and statements concerning her lifestyle and abilities also support the ALJ's finding that Plaintiff does not meet a listing. Plaintiff lives with her husband and is able to do basic domestic duties. Plaintiff also had several jobs and was never fired but instead quit for a combination of reasons including absences due to depression as well as conflict with coworkers. Moreover, Plaintiff worked part-time for minimum wage and had other low

12

paying jobs, which supports the ALJ's inference that Plaintiff's motivation to work was low.

Based on the evidence cited by the ALJ and discussed above, the ALJ's determination that Plaintiff did not meet a listing is supported by substantial evidence, and this Court may not reweigh the evidence or substitute its judgment for the Commissioner's. *See Hollis*, 837 F.2d at 1383.

II    A separate finding that Plaintiff can maintain employment was not required.

Plaintiff contends the ALJ erred by failing to make an express finding concerning her ability to maintain employment because of Plaintiff's testimony about frequent work absences and medical source statements that Plaintiff cannot maintain work. Plaintiff testified that she had come to the conclusion that she was not able to handle work after she was repeatedly absent from a job training program due to depression and anxiety. *See* Tr. at 77. She testified that she went from full-time to part-time work at Wal-Mart and that, after several leaves of absence, she quit, in part because her mental and physical problems were getting worse and causing her to be absent and in part because of difficulties in dealing with people and conflict with other employees. *See id.* 80-87. Plaintiff also testified that she could not do any of her former jobs "consistently." *Id.* at 90. Donna Haynes, a registered nurse with Lakes Regional MHMR, stated in a letter that Plaintiff was incapable of "getting or keeping employment at this time." *Id.* at 17, 347.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work with mental limitations. *See id.* at 25.

13

In *Watson v. Barnhart*, the United States Court of Appeals for the Fifth Circuit held that the ALJ erred by failing to determine whether the plaintiff was capable not only of obtaining but also maintaining employment. 288 F.3d 212, 218 (5th Cir. 2002). The RFC rules (20 C.F.R. § 404.1545) and a Social Security Ruling (SSR 96–8p (1996)) both make clear that the RFC is a measure of the plaintiff's capacity to perform work "on a regular and continuing basis," and in most cases the ability to maintain employment is adequately taken into account in the RFC determination. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005); *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). In decisions following *Watson*, the Fifth Circuit has clearly rejected the idea that an ALJ must in all cases make a separate finding that the claimant has the ability to maintain employment. *See Frank*, 326 F.3d at 619. Any such required extra finding must be predicated on the claimant having an impairment that waxes and wanes in its manifestation of disabling symptoms. *See Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003); *Frank*, 326 F.3d at 619.

The Court of Appeals in *Frank* explained that "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619. *Frank* gave an example of evidence that might necessitate a separate finding of a claimant's ability to maintain employment: "For example, if [the Plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.*

14

In *Perez*, the Fifth Circuit also found that the plaintiff's evidence of "waxing and waning" disability did not rise to the level of impairment required by *Watson*. 415 F.3d at 465. The plaintiff claimed his "pain would vary in intensity or 'wax and wane' between injections;" he had "good days and bad days;" and his expert witness testified that "he knew Mr. Perez and it was his professional opinion that Mr. Perez would not be able to work a 30 hour week on a reliable basis." *Id.* at 465-66. The Court of Appeals found that such assertions were not sufficient to bring Perez's case within the scope of *Frank*. *Id.* at 465. The panel further remarked that "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.*

The Fifth Circuit held in *Dunbar* that, "absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of" residual functional capacity, a separate finding regarding an ability to maintain employment is not required. 330 F.3d at 671.

Here, Plaintiff argues that her frequent absences from work and a job-training program were evidence that her depression waxed and waned. And, while Plaintiff is correct that she is not required to recite the magic words "wax and wane" to trigger the ALJ's obligation to make a separate determination of the claimant's ability to maintain employment, "it is not enough for a claimant to assert, in general, that the impairment waxes and wanes; the claimant must demonstrate that [her] particular impairment

15

waxes and wanes." *Tigert v. Astrue*, No. 4:11-cv-435-Y, 2012 WL 1889694, at *7 (N.D. Tex. May 2, 2012).

The evidence concerning Plaintiff's absences from work, without more, does not establish that her physical ailment waxes and wanes. The ALJ therefore was not required to make a separate finding as to whether Plaintiff can maintain employment and did not err in not doing so.

III.   The RFC determination is not supported by substantial evidence.

Plaintiff contends that substantial evidence does not support the RFC because the ALJ allegedly rejected all medical opinions and relied on his lay opinion to determine the RFC. The ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but is limited to understanding, remembering, and carrying out only simple instructions and is further limited to no more than occasional contact with the general public and co-workers. *See* Tr. at 25.

The determination of residual functional capacity is solely the ALJ's responsibility, *see Taylor v. Astrue,* 706 F.3d 600, 602-03 (5th Cir. 2012), and the ALJ considers all relevant medical and other evidence in making the RFC determination, *see* 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The

16

ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Here, the ALJ reviewed Plaintiff's work history, activities of daily living, and statements and the opinions of medical providers to determine Plaintiff's RFC. *See id.* at 26-29.

Donna Hayes, a registered nurse, noted in a March 3, 2011 letter that Plaintiff is unable to work because of symptoms related to depression and anxiety. Ms. Hayes remarked that Plaintiff has difficulty adapting to stressful situations and changes and has difficulty being around people and leaving her house. *See id.* at 27, 347. In a Medical Assessment of Ability to do Work Related Activities dated June 22, 2012, Ms. Hayes found that Plaintiff has fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration. She also found that Plaintiff had fair ability to understand, remember, and carry out complex, detailed and simple job instructions, to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability. Eric Kemp, M.D. also signed the medical assessment. *See id.* at 27, 738-40. Susan Lautz, a licensed professional counselor, met with Plaintiff once. She diagnosed Plaintiff with major depressive disorder, without psychotic symptoms, and opined that Plaintiff was not capable of getting or keeping employment. *See id.* at 27, 715. The ALJ did not attach significant weight to these opinions because they were at odds with progress notes

during the same time frame reflecting that Plaintiff's symptoms were in the mild range except for depression, which was slightly less than moderate. *See id.* at 27-28, 721-36.

Plaintiff suggests that the ALJ failed to consider the opinion of examining physician Linda Ludden, Ph.D., who diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic features; posttraumatic stress disorder, chronic; and generalized anxiety disorder and concluded that Plaintiff's prognosis was poor. *See id.* at 467. The ALJ implicitly rejected Dr. Ludden's opinion when he determined that both Dr. Ludden's opinion and global assessment functioning scores of 42 or 45 found throughout the MHMR progress notes were inconsistent with comments in the MHMR progress notes rating Plaintiff's symptoms as mild to moderate. *See id.* at 26.

Plaintiff also complains that the ALJ did not consider the opinions of Roberta Herman, M.D. and M.A. Zeb., M.D. But both of those doctors treated Plaintiff for physical, not mental, impairments, and Plaintiff does not assert that she is disabled by a physical impairment. *See id.* at 64-65.

State Agency medical consultants Leela Reddy, M.D. and Mark Boulus, M.D. found on May 23, 2011 and August 2, 2011, respectively, that Plaintiff retains the abilities to understand, remember, and carry out simple instructions; make decisions; attend and concentrate for extended periods; interact appropriately with coworkers and supervisors; and adapt to routine changes in a work setting. *See id.* at 28, 539-40, 576. Based on a review of the record, the ALJ concluded that Plaintiff was more limited than the State agency medical examiners did but less limited than other medical

18

providers stated and made a RFC determination that Plaintiff was moderately limited in social functioning, which equates to no more than occasional interaction with the general public and coworkers. *See id.* at 28.

Plaintiff contends that the ALJ had no basis for the RFC finding, as demonstrated by the ALJ's rejection of medical opinions that Plaintiff is unable to work, the lack of a corroborating medical source statement, and the ALJ's failure to address Plaintiff's mild symptoms' effect on Plaintiff's ability to work.

In a situation in which a medical source statement describing the types of work that the applicant is still capable of performing has not been provided, the Court focuses on whether the ALJ's decision is supported by substantial evidence in the existing record. *See Ripley*, 67 F.3d at 557. But the Court of Appeals has reversed a RFC determination where a "record does not clearly establish is the effect [a plaintiff's] condition had on his ability to work." *Id.*

Here, the ALJ again reviewed Plaintiff's work history, in which her mental limitations were exacerbated by difficulties dealing with people and conflicts with other employees or family members. The ALJ also noted that Plaintiff testified about problems with side-effects from medication. The ALJ observed that Plaintiff experienced mental difficulties when she stopped taking her anti-depressant medications but that her symptoms were rated less than moderate in severity when she was medication-compliant. The ALJ also again referred to Plaintiff's statements that she can do basic housekeeping, drive, shop, and handle money. The ALJ thus concluded that the progress notes consistently reflecting mild to moderate limitations

19

did not support a finding that the claimant is unable to work or that her ability to perform work tasks is only in the "fair" range. Based on these considerations, the ALJ determined that Plaintiff had the ability to work, but he added mental limitations to the RFC to accommodate for Plaintiff's mild symptoms.

The problem with the ALJ's RFC determination is, as Plaintiff argues, that the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability to work and relied on progress notes that do not themselves address Plaintiff's work limitations. As Plaintiff argues in her reply, even on appeal, the Commissioner cannot explain what "mild symptoms" means in the context of Thornhill's ability to respond to increases in mental demands or changes in environment. *See* Dkt. No. 21 at 10-11. While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*, 67 F.3d at 557-58, even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply. Rather, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given her impairments. *See id.* at 557. The Court therefore "cannot agree that the evidence substantially supports the conclusion that [Plaintiff] was not disabled because [the Court is] unable to determine the effects of [Plaintiff's] conditions ... on [Plaintiff's] ability to perform ... work." *Id.* at 557 n.27; *cf. Williams v. Astrue*, 355 F. App'x 828, 831–32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied

on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC).

Reversal is only warranted, however, if the claimant shows that she was prejudiced by the ALJ's error. Prejudice is established when the claimant demonstrates that she would have adduced evidence that might have changed the result. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Prejudice is demonstrated where the ALJ could have obtained evidence that might have changed the result – specifically, a medical source statement. As such, reversal and remand for further proceedings is required.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 15, 2014

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE